**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| ST. GREGORY CENTERS, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STANTON PEELE,<br><br>　　　　Defendant. | CASE NO.  4:11-cv-00095 |
| STANTON PEELE,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>ST. GREGORY CENTERS, INC., and<br>MICHAEL VASQUEZ,<br><br>　　　　Counterdefendants. | **ST. GREGORY CENTERS, INC.'S<br>BRIEF IN SUPPORT OF MOTION<br>TO COMPEL DISCOVERY<br>RESPONSES** |

COMES NOW the Plaintiff and Counterdefendant, St. Gregory Centers, Inc. ("St. Gregory"), and pursuant to Federal Rule of Civil Procedure 37 and Local Rules 37, and hereby submits this Brief in Support of its Motion to Compel Discovery Responses.

## TABLE OF CONTENTS

I.    BACKGROUND FACTS AND PROCEDURAL HISTORY ......................................... 2

II.   LEGAL ARGUMENT ................................................................................................ 4

　　　A. PEELE'S DEFICIENT ANSWERS TO ST. GREGORY'S
　　　　　INTERROGATORIES. ............................................................................... 4

　　　　　1.   Interrogatory No. 2. ........................................................................ 4

　　　　　2.   Interrogatory No. 3. ........................................................................ 5

　　　B. PEELE'S DEFICIENT RESPONSES TO ST. GREGORY'S REQUEST FOR

PRODUCTION OF DOCUMENTS. ........................................................ 8

1.  Request No. 10. ................................................................. 8

C.  THE COURT SHOULD AWARD ST. GREGORY THE EXPENSES
INCURRED, INCLUDING ATTORNEYS FEES, IN MAKING AND
BRINGING THIS MOTION. ................................................................. 20

III.   CONCLUSION .......................................................................... 20

## I.     BACKGROUND FACTS AND PROCEDURAL HISTORY

St. Gregory has waited over five (5) months and made numerous good-faith efforts to obtain complete responses to its initial discovery requests.   Unfortunately, despite these exhausting efforts, Defendant / Counterclaimant, Stanton Peele ("Peele"), has failed and continues to fail in fully and completely responding to St. Gregory's initial discovery requests. Peele's failures are unnecessarily delaying this case in that St. Gregory cannot proceed with needed depositions and other important matters until Peele produces the requested information. As a result, St. Gregory now seeks an Order from this Court compelling Peele to comply with the Rules and to provide the requested materials.

On or about October 26, 2011, St. Gregory served its First Set of Interrogatories and First Set of Requests for Production of Documents on Peele.   Exhibits E, and G respectively.   Peele's deadline for responding to the discovery was approximately November 28, 2011.  Unfortunately, Peele's deadline to respond to St. Gregory's discovery came and went, and Peele failed to respond.   In fact, not only did Peele fail to respond, but he failed to provide any response or make any contact with St. Gregory or its counsel whatsoever.   As a result, on December 14, 2011, St. Gregory made its first of many good-faith attempts to obtain Peele's responses to its discovery requests by sending a letter to Peele requesting his responses.  *See December 14, 2011*

Letter from Matthew H. McKinney to Stanton Peele, attached as Exhibit A.  Peele responded to St. Gregory's December 14, 2011 letter, stating he needed yet more time to respond.  *See* December 15, 2011 Email from Stanton Peele to Matthew H. McKinney, attached as Exhibit B. In good-faith, St. Gregory agreed to allow Peele additional time to respond.

Peele Answered St. Gregory's Interrogatories on December 21, 2011 and St. Gregory's Responses to the Requests for Production on January 13, 2012.  As described below, however, Peele's Answers and Responses to St. Gregory's discovery requests were deficient in many respects, which prompted St. Gregory to send a second good-faith discovery dispute letter to obtain full and complete responses.

On January 20, 2012, St. Gregory explained through a detailed letter how and why Peele's Responses to St. Gregory's Requests for Production were deficient and were treated as a failure to respond pursuant to Federal Rule of Civil Procedure 37(a)(4).  *See* January 20, 2012 Letter from Matthew H. McKinney to Stanton Peele, attached as Exhibit C.  Similarly, on January 27, 2012, St. Gregory also explained how and why Peele's Answers to St. Gregory's Interrogatories were also deficient and treated as a failure to answer pursuant to Federal Rule of Civil Procedure 37(a)(4).  *See* January 27, 2012 Letter from Matthew H. McKinney to Stanton Peele, attached as Exhibit D.

After sending each of these good-faith letters and in a further effort to obtain responses and resolve any issues, St. Gregory's counsel also participated in a good-faith teleconference with Peele on February 3, 2012.  *See* Matthew H. McKinney's Declaration, attached hereto as Exhibit N, ¶ 3.  While the conversation was good-natured, several issues thought to be resolved in said conference remain unresolved and now require the Court's involvement.  For example,

during the call, Peele indicated he would provide email communications and documents that he exchanged with several individuals.  Unfortunately, despite Peele's representations, Peele has failed to supplement St. Gregory's initial discovery requests with any documents, let alone the emails he represented he would provide.  Exhibit N, ¶ 4.  Over two months after being promised, and as of the time of filing this Motion, St. Gregory is still waiting for the promised materials. Peele's inexcusable delay has unnecessarily brought this litigation to a crawl and is preventing St. Gregory and Michael Vasquez from moving forward on other important discovery related matters as well as preparing for trial.[1]  This Court must order the production of these items.

In addition to Peele's failure to provide the documents and emails he agreed he would provide, several other disputes exists, which also require the Court's involvement.  For the reasons outlined below, St. Gregory's Motion must be granted and Peele must be required to pay St. Gregory's fees and costs for having to file this Motion.

## II.   LEGAL ARGUMENT

### A.   PEELE'S DEFICIENT ANSWERS TO ST. GREGORY'S INTERROGATORIES.

#### 1.   Interrogatory No. 2.

Interrogatory No. 2 requests Peele provide specific information related to individuals he intends to call as witnesses at trial, and states:

> **INTERROGATORY NO. 2:**  Please IDENTIFY ALL PERSONS YOU intend to call as witnesses at trial, including their full name, address, telephone number(s), relationship to YOU, anticipated testimony at trial, AND YOUR understanding of the basis for their knowledge.  If YOU do not yet know who YOU will call, please list those YOU anticipate calling as witnesses AND provide

---

[1] Peele's delay in fully responding to the discovery previously prompted a Motion to Continue the discovery deadlines.  Unfortunately, Peele's continued delay and refusal to produce responsive materials, including materials he previously stated would be forthcoming, will likely necessitate another Motion to extend discovery and dispositive motion deadlines, if not the trial.

the requested information.

Exhibit E, p. 2.

In response to Interrogatory No. 2, Peele identified several individuals, but failed to state, as requested, each individual's anticipated trial testimony.  Exhibit F, pp. 2-6.  For example, Peele's Answer lists Archie Brodsky as a person he intends or anticipates calling as a witness, but Peele does not identify, as required, the anticipated testimony that Mr. Brodsky will provide at trial.  The same is true for Vicki Rowland, Allie Tibbetts-Hutchins, Michelle Johnson, Christina Johnson, and several other witnesses that Peele identified as individuals he intends and/or anticipates calling as witnesses at trial.  Peele should be compelled to provide all requested information for each individual identified within his Answer.  This information is needed so St. Gregory can determine the extent of knowledge of these individuals, their anticipated trial testimony, and whether depositions may be appropriate.  Such information is clearly discoverable.

Pursuant to Federal Rule of Civil Procedure 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  Accordingly, Peele's response to Interrogatory No. 2 must be treated as a failure by Peele to respond to Interrogatory No. 2.  As a result, St. Gregory is entitled to an Order from this Court compelling Peele to adequately respond to Interrogatory No. 2.  *See* Fed. R. Civ. P. 37(a)(3)(B)(iii) (stating "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if: *** (iii) a party fails to answer an interrogatory submitted under Rule 33.").  Supplementation should be ordered.

    **2.**        **Interrogatory No. 3.**

Interrogatory No. 3 requests Peele provide specific information regarding individuals he has discussed matters at issue in this case with, and states:

> **INTERROGATORY NO. 3:**   Please IDENTIFY the name, address AND telephone number of ALL PERSONS or ENTITIES with whom YOU or YOUR REPRESENTATIVE(S) have had ANY contact, through written, oral, OR ANY other communications RELATING TO either the above captioned case, PLAINTIFF, PLAINTIFF'S Petition, addiction OR addiction recovery / treatment, YOUR Answer, YOUR Affirmative Defenses, YOUR Counterclaim, COUNTERDEFENDANTS, OR ANY other matter(s) RELATED TO this action from January 1, 2008 to the present.   For each such PERSON OR ENTITY, please specify:
> a.    The date of the conversation;
> b.    Whether the conversation was recorded OR reduced to writing;
> c.    The facts revealed in the conversation; AND
> d.    The custodian of the recordings, statements OR notes concerning the conversation.

Exhibit E, p. 3.

In response to Interrogatory No. 3, Peele objected on the grounds that the request is overly broad, unduly burdensome, and harassing in nature, but, subject to and without waiving such objection, Peele identified several individuals that he has discussed the case with.   For example, Peele stated he "has discussed the ongoing case, including plaintiff's claims, defendant's defenses and counterclaims, and further motions and responses, including discovery, *__in detail with Archie Brodsky and in outline with Tom Horvath__*."   Exhibit F, p. 7 (emphasis added).   Peele has also discussed matters relating to the case with Ms. Mary Arnold. Unfortunately, despite admitting conversations with these and other individuals, including by emails with at least Archie Brodsky, Peele failed to explain, as required, any details regarding his conversations or any facts revealed in those conversations.   Further, Peele has not stated if he is in possession of any recordings of any such conversations or any statements of these witnesses, all of which are clearly discoverable.   At the very least, Peele must be compelled to either

consult his emails to respond to this request or produce the emails pursuant to Federal Rule of Civil Procedure 33(d).

Under the Rules, St. Gregory's interrogatories "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). As referenced therein, Federal Rule of Civil Procedure 26(b) permits broad discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter … Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Iowa's Federal Courts have emphasized the widely accepted principle that "The Federal Rules of Civil Procedure authorize broad discovery." *Penford Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 265 F.R.D. 430, 432 (N.D. Iowa 2009); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) ("The discovery rules mandate a liberality in the scope of discoverable material … [and] The party resisting production bears the burden of establishing lack of relevancy or undue burden."). Peele does not dispute the information sought is discoverable and his objections are suspect. More importantly, Peele cannot meet his burden of establishing his stated objections are valid.

Interrogatory No. 3 is narrowly tailored to the issues in this case and only requires Peele to provide information regarding conversations he shared on topics that are highly-relevant and specifically tied to disputed issues in this case. Further, the request is limited to the applicable time periods as well further limiting the scope of the response. Other than asserting a blanket and conclusory objection, Peele failed to identify how St. Gregory's request is overly broad, or how compliance is unduly burdensome and/or harassing in nature. Clearly, Peele can respond to

the Interrogatory and provide whatever responsive information that he has; yet, he refuses to do so. The Interrogatory is proper and Peele should be ordered to respond.

It is important to note that St. Gregory provided Peele with a USB thumb-drive so as to allow Peele the option of quickly and easily responding to the request by "dragging and dropping" responsive documents, if any, and electronically stored information from his computer to the thumb-drive.[2] This would allow Peele to respond to the Interrogatory by producing his records in accordance with Rule 33(d), if he so desired. Peele has not done this either.

Peele's conclusory objections are unsupported by fact or law and he failed to meet his burden. *See Penford Corporation*, 265 F.R.D. at 432-33. Peele should be ordered to provide all information in his possession that is responsive to Interrogatory No. 3.

## B.     PEELE'S DEFICIENT RESPONSES TO ST. GREGORY'S REQUEST FOR PRODUCTION OF DOCUMENTS.

### 1.     Request No. 10.

Request for Production No. 10 requests Peele provide documents (including emails) that he sent, received, or exchanged with individuals and that relate to this case, and states:

> **REQUEST NO. 10**:  All DOCUMENTS that YOU sent, received OR exchanged with ANY other PERSON OR ENTITY (including but not limited to Archie Brodsky, Michelle Johnson, Allie Tibbetts Hutchins, Ilse Thompson, Tom Horvath, AND ANY other EMPLOYEE OR REPRESENTATIVE of PLAINTIFF) that RELATE TO either the above-captioned case, PLAINTIFF, PLAINTIFF'S Petition, addiction OR addiction recovery / treatment, YOUR Answer, YOUR Affirmative Defenses, YOUR Counterclaims, COUNTERDEFENDANTS, OR ANY other matter(s) RELATED TO this action from January 1, 2008 to present.

Exhibit G, p. 8.  Peele's response to Request No. 10 is evasive and incomplete and his objections

---

[2] Such a simplified procedure eliminates the need to engage in time intensive and potentially expensive tasks, such as physically printing out and/or copying all responsive materials and then mailing a large volume of heavy documents.  By providing a USB thumb-drive, Peele can simply place the responsive materials onto the USB thumb-drive and mail the small drive back to St. Gregory's counsel in a small envelope with little effort and no cost.

are without merit.

As stated above, Archie Brodsky, Michelle Johnson, Allie Tibbetts Hutchins, Ilse Thompson, and Tom Horvath are all witnesses in this case who are slated to testify at trial. There is no dispute that the request seeks discoverable information and St. Gregory is entitled to discover what documents have been provided to these witnesses or what they have exchanged with Peele. Yet, Peele has not produced these documents and production must be ordered.

Peele's objection to Request No. 10 states: "Defendant objects to this request because it is overly broad, unduly burdensome, and harassing in nature and in great part is not reasonably calculated to lead to the discovery of admissible evidence." Exhibit H, p. 14. Again, Peele is mistaken as this Request is narrowly tailored to obtain documents (including emails), from a limited time period, that relate directly to matters at issue in this case. For instance, the request is proper as it seeks to discover, among other things: (1) Peele's knowledge, as he has explained it in writing, on the very matters at issue in the case; (2) the basis for Peele's knowledge on those matters; (3) potential witnesses (by discovering who Peele is and has communicated with about this case); (4) the knowledge those potential witnesses possess about the case; and (5) matters relating to credibility, including any biases and/or prejudices of the individuals and witnesses that Peele is communicating with and will have testify at trial. For Peele to argue these documents are not relevant or are not reasonably calculated to lead to the discovery of admissible evidence shows the weakness of Peele's entire position – these are clearly discoverable documents. *See* Fed. R. Civ. P. 26. Further, Peele cannot demonstrate compliance will be unduly burdensome in any way because, as explained above, St. Gregory provided him with an easy-to-use USB thumb-drive where Peele can quickly and easily search his computer and then

drag and drop emails and documents on to the thumb-drive for production.[3]   Finally, it is important to note that a Protective Order has been entered in this case and to the extent any sensitive Material exists, Peele can simply produce the Material with a CONFIDENTIAL stamp to protective any sensitive information.   Peele's conclusory and unsupported objections are improper and must fail.   Since he will not produce the information voluntarily, this Court must order it.

Perhaps most troubling, however, is Peele's flat out refusal to produce highly-relevant and discoverable communications he has exchanged with one of his primary witnesses, namely Archie Brodsky.   Peele's Response to Request No. 10 stated in relevant part, "as to Archie Brodsky, from the initiation of this lawsuit, March 2, 2011, defendant claims and refuses to waive work product doctrine."   Exhibit H, p. 14.   Peele is an experienced trial attorney who was licensed to practice until April 2011 (*after* this case was filed).   He knows the work-product doctrine does not apply here.[4]   Exhibit N, ¶¶ 5,6.   Indeed, from the very first telephone conversation that St. Gregory's counsel had with Peele up to and including the filing of this Motion, St. Gregory's counsel repeatedly reminded and cautioned Peele that communications with third-party witnesses, specifically including Archie Brodsky, are not protected.   Exhibit N, ¶¶ 7,8.

---

[3] Peele has explained to St. Gregory's counsel that his emails and related documents are located on an Apple computer.  St. Gregory's counsel remains available to assist or otherwise further explain to Peele how to quickly and easily search the entire contents of his computer and produce the requested information.  It is also important to note that Peele is familiar with using computers as he has sought to conduct and has conducted a deposition in this matter via Skype and he maintains a website a http://www.peele.net.  Put another way, Peele cannot meet his burden of demonstrating complying with this request will be unduly burdensome in any way.

[4] During a phone call with St. Gregory's counsel on February 3, 2012, Peele explained he practiced in Federal and State Court representing clients on litigation matters.  According to information provided by the New Jersey State Bar Association on March 22, 2012, Mr. Peele was admitted to practice in the State of New Jersey on December 16, 1997 and he resigned on April 6, 2011.  Similarly, according to the New York State Bar Association, Mr. Peele was admitted to practice in the State of New York on March 17, 1998 and he resigned in May 2006.  Exhibit N, ¶¶ 5,6.

Further, on July 25, 2011, and during the Rule 16 scheduling conference, Peele explained to St. Gregory's counsel for the first time that he (Peele) may choose to discuss certain issues with Brodsky, a non-attorney and material witness.  Exhibit N, ¶¶ 7,8.  During the call, St. Gregory's counsel, Matthew McKinney, informed Peele, that Peele could proceed as he pleased, but that neither St. Gregory nor Michael Vasquez would agree that Peele's communications with Brodsky would be protected or privileged.  Exhibit N, ¶¶ 7,8.  Peele acknowledged Mr. McKinney's statements and stated that his communications with Brodsky would not "obviate" St. Gregory's right to conduct discovery and that Brodsky would not be treated different from any other witness.  Exhibit N, ¶ 7.  Peele further acknowledged during the call that because Brodsky is not an attorney, the attorney-client privilege is a "non-issue."  Exhibit N, ¶ 7.  These reminders and cautions were subsequently reiterated and confirmed in a September 16, 2011 letter from Matthew McKinney to Peele.  *See* September 16, 2011 Letter from Matthew McKinney to Stanton Peele attached as Exhibit I, at p. 5.

This was not the only warning given to Peele that communications with Brodsky were not protected in any way and were fully discoverable in this case.  For instance, on November 11, 2011, Matthew McKinney again reiterated in writing to Peele that his (Peele's) communications with Brodsky are not protected in any way:  "Please keep in mind that Mr. Brodsky is not an attorney, the attorney-client privilege, work product doctrine, and any other similar protection does not apply …"  *See* November 11, 2011 email from Matthew McKinney to Stanton Peele, attached as Exhibit J, p. 1.  Peele replied to this email on November 14, 2011 and confirmed he understood St. Gregory's position:  "***I understand that you indicate that you will give me no waivers on any of my communications with Archie Brodsky***…"  Exhibit K

(emphasis added).  In yet further communications, St. Gregory's counsel *again* reminded Peele in writing that communications with Brodsky are not protected:

> With regards to Mr. Brodsky, he is not your attorney, is not an attorney (at least to our knowledge), is not representing you in this case, and you have no privilege that applies to any conversations you have with him.  We have been clear on this from the start of this case.  If you choose to send him information, that information and those conversations are completely and entirely discoverable.  I know you are a lawyer and understand these rules.  In short, if you produce information to Mr. Brodsky, you do so at your own risk.  This is why we have not been copying and won't be copying Mr. Brodsky with information that we disclose in this case.  We will let you make the decision on what you want to produce to Mr. Brodsky knowing the consequences.

*See* February 2, 2012 email from St. Gregory's Attorney, Brian Rickert, to Stanton Peele, attached as Exhibit L.  Peele, a trained attorney and experienced trial lawyer, knows the rules governing privileges and the work-product doctrine and he could not have had a reasonable expectation that communications exchanged with Brodsky (a non-party, non-attorney, and material witness Peele disclosed as an individual he intends to call at trial) would be protected.

Peele cannot claim surprise or prejudice by being compelled to produce the requested documents as Peele was repeatedly informed that St. Gregory would not treat his (Peele's) communications with Brodsky as protected under any circumstances.  In short, Peele cannot meet his burden[5] of proving the work-product doctrine will shield highly-relevant communications that he voluntarily shared with his material witness and that his witness shared with him.[6]

---

[5] *Falkner v. Gen. Motors Corp.*, 200 F.R.D. 620, 622 (S.D. Iowa 2001) (acknowledging the party asserting the "work-product privilege … bear[s] the initial burden of establishing a factual basis for their assertion.").

[6] Peele has confirmed that Brodsky will serve as one of his main witnesses at trial.  According to Peele, Brodsky possesses critical knowledge regarding several hotly-contested issues:   "Mr. Brodsky has personally witnessed and participated in key events in question …"  *See* February

The work-product doctrine does not extend to Peele's communications with third-party witnesses, such as Brodsky, for several reasons. First, the work-product doctrine protects an *attorney's* mental impressions, opinions, personal beliefs, and related matters, it does not protect, however, documents prepared by and/or exchanged with material witnesses, such as Brodsky. *See, e.g., Rail Intermodal Specialists, Inc. v. Gen. Elec. Capital Corp.*, 154 F.R.D. 218, 221 (N.D. Iowa 1994) (stating, "Work product protection is designed to prevent "unwarranted inquiries into the files and mental impressions of an *attorney.*")(emphasis added); *see also In re Grand Jury Subpoena*, 220 F.R.D. 130, 144 (D. Mass. 2004) (recognizing, "…courts typically do

---

10, 2012 Letter from Peele to St. Gregory's counsel, attached as Exhibit M. Peele also identified at least six (6) different key areas of testimony for which he will call Brodsky to testify about at trial:

> Per your request, I [Peele] hereby offer these areas on which Mr. Brodsky will provide factual testimony:
> 1. Initial approach of St. Gregory to Peele, and creation of the License Agreement;
> 2. Production of the LPP manual, revision thereof, and creation of the ALPP Institute manual;
> 3. Production of subsidiary materials (e.g., Family Guide);
> 4. Ongoing business dealings between Peele and St. Gregory of which Peele kept him abreast;
> 5. Interactions Archie himself had with Rose Marie and Michael Vasquez and others at St. Gregory (particularly Allie Tibbetts), including phone and e-mail, particularly with Rose Marie and Allie around creating the foregoing documents, which in some cases included editing and production work for which he and his wife, Vicki Rowland, were paid by St. Gregory;
> 6. Interactions between Peele and St. Gregory at which Archie was present in person during a visit he and his wife made with Peele in August 2009 to both St. Gregory residences and corporate headquarters, as well as to the Vasquezes' summer home and condominiums in the lake region of northwestern Iowa.

*See* Exhibit M. These areas of testimony directly relate to the matters at issue in this litigation, and any documents exchanged by Brodsky with any person, including Peele, are highly relevant and clearly discoverable.

not extend [work-product doctrine] protection to documents prepared by non-parties or their agents.") *citing FTC v. Grolier Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (dictum); *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d at 924; *In re California Pub. Util. Comm'n,* 892 F.2d 778, 780–81 (9th Cir.1989); *In re Polypropylene Carpet Antitrust Litig.,* 181 F.R.D. 680, 691 (N.D.Ga.1998) (holding that "[d]ocuments prepared by one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) …); 8 Wright, Miller & Marcus, *supra,* § 2024, at 354–56). Again, Brodsky is neither an attorney nor a party in this litigation. Consequently, any mental impressions and/or opinions Brodsky exchanged with Peele, or anyone else, are not protected by the work-product doctrine. Further, because Brodsky is an individual that Peele will call to testify at trial, Brodsky's knowledge, basis for his knowledge, biases, prejudices, opinions, and mental impressions regarding matters at issue in this case are highly-relevant and must be disclosed. Further, any comments made by Brodsky to Peele or vice versa relate to both of their credibility, which is always at issue.

Second, applying the work-product doctrine to prevent disclosure of highly-relevant documents undermines the very purpose of the work-product doctrine. Federal Courts across the Country, including here in Iowa, have recognized the purpose of the work product doctrine is to protect an *attorney's* mental thoughts and impressions – a "zone of privacy." *Rail Intermodal Specialists, Inc.*, 154 F.R.D. at 221; *Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 37 (D. Mass. 2003) ("[t]he purpose of the work-product doctrine … is to give an attorney '...a zone of privacy with which to prepare his client's case and plan strategy, without undue influence.'" *quoting In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1014 (1 Cir. 1988)). Here, Brodsky is a witness, not an attorney, and extending protection to Materials prepared by Brodsky would

undermine the entire purpose of the doctrine.  Brodsky does not represent Peele; rather, Peele elected to represent himself.  Thus, Peele's "zone of privacy" does not extend to Brodsky, a non-party and witness.  Peele certainly could seek legal counsel, and if he did, the work-product of his counsel would be protected – to the extent it wasn't shared with third-parties, which is what happened here.  Peele did not seek legal counsel and he cannot now single handedly alter the entire work-product doctrine to create an *ad hoc* privilege with a material witness that he will call to the stand at trial.

If the work-product doctrine were extended to Materials exchanged with Brodsky or any other witness, then the work-product doctrine would be permitted to be used as both a shield (to hide highly-relevant communications and strategies that Peele knowingly shared with a material witness as well as that witness' basis of knowledge, biases, prejudices, and other matters) and a sword (by educating Brodsky and influencing - whether intentional or otherwise - Brodsky's testimony, as well as having Brodsky understand the testimony of other witnesses and how Brodsky should "frame" his testimony to satisfy the hidden and pre-arranged strategy).  In short, applying the work-product doctrine to Brodsky and Peele's communications undermines the purpose of the work-product doctrine and, in fact, allows Peele to unduly influence a key third-party witness while prohibiting St. Gregory from discovering such influence and other matters relating to the witness' credibility.  The Court should admonish such an improper litigation tactic and order Brodsky to produce Documents requested within Request No. 10.

Third, assuming *arguendo* that the work-product doctrine somehow applied to certain documents, which it does not, Peele's blanket objection is nonetheless improper as the doctrine only protects documents prepared in anticipation of litigation.  *St. Paul Reinsurance Co., Ltd.*,

197 F.R.D. at 629 ("The work product doctrine will not protect these documents from discovery unless they were prepared in anticipation of litigation.") (internal citation omitted); *see also In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass. 2004); *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947). Peele has not stated that any of these documents were prepared in anticipation of litigation. Moreover, the work-product doctrine does not provide protection to any communication(s) that Brodsky created or shared as Brodsky is not a party or an attorney preparing for the litigation; Brodsky is simply a witness, and any documents he sent to Peele must be produced. *St. Paul Reinsurance Co., Ltd.*, 197 F.R.D. at 629 (recognizing the work-product doctrine only protects communications made in anticipation of litigation). Peele must produce these documents.

Fourth, it must be noted that Peele failed to comply with Federal Rule of Civil Procedure 26(b)(5) and he has not provided St. Gregory with a detailed privilege log or related document, as required. Therefore, St. Gregory and this Court are unable to even make a determination as to what Materials Peele is improperly withholding and the basis for withholding those materials. However, this failure is more problematic for Peele. By so acting, and under the Rules, Peele waived any work-product protection by failing to properly assert the work-product doctrine and failing to provide a privilege log. *Id.* at 640; *see also Rabushka v. Crane Co.,* 122 F.3d 559, 565 (8th Cir.1997); *Disidore v. Mail Contractors of Am., Inc.,* 196 F.R.D. 410, 413 (D.Kan.2000). In *St. Paul Reinsurance Co. Ltd.*, the Iowa Federal District Court for the Northern District held that "[w]aiver may also occur when a party fails to assert the privilege properly," such as by asserting a "blanket claim" or "conclusory assertion" as to the applicability of the work-product doctrine and failing to provide a detailed privilege log. *Id.* Indeed, after citing numerous cases, the court

found the party asserting the privilege failed to timely and properly assert the privilege, and thus, "the court conclude[d] that the [party asserting the privilege] waived work product privilege as to any of the documents … by failing to assert privilege in a timely and effective manner." *Id.* at 641. Here, despite being served discovery requests in October 2011 that contained instructions to provide a privilege log if a privilege was being asserted (see Exhibit G, p. 4, ¶ 16), and despite being reminded to produce a privilege log in January 2012, and despite knowing the requirements of the Rules, Peele failed to comply and waived any privilege objection, if one even existed.

Fifth, Peele further waived any work-product protection when he voluntarily and knowingly relinquished control of the Materials and provided them to a third-party that he has listed as a trial witness. *United States v. Johnson*, 378 F. Supp. 2d 1041, 1046 (N.D. Iowa 2005) ("The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived."); *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982) (stating, "[w]e have held that a party waives its work product protection in civil litigation if it discloses the privileged material to anyone without 'common interests in developing legal theories and analyses of documents.'"); *see also United States v. Nobles*, 422 U.S. 225, 239, 95 S. Ct. 2160, 2170, 45 L. Ed. 2d 141 (1975) (finding waiver occurred and recognizing "the privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived."); *In re Lindsey*, 158 F.3d 1263, 1282 (D.C. Cir. 1998) (stating, "[a]s a usual rule, disclosure of attorney-client or work product confidences to third parties waives the protection of the relevant privileges); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (stating, "[g]enerally disclosure of confidential communications or attorney work

product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items."). As explained above, Peele, a trained attorney and trial lawyer, did not have a reasonable expectation that communications with Brodsky would be protected, especially considering that Peele disclosed Brodsky as one of his main witnesses and that St. Gregory repeatedly reminded him that any such protection does not exist. In November 2011, Peele said it best himself: "I understand that you indicate that you will give me no waivers on any of my communications with Archie Brodsky…" *See* Exhibit K. As such, when Peele knowingly placed Materials into Brodsky's hands - an individual he listed as a trial witness[7] - Peele knew or should have known that those documents were discoverable, that St. Gregory would be able to obtain them, and that any privilege or protection was waived.

Finally, bending the work-product doctrine to protect Peele's communications with his primary witness will greatly prejudice St. Gregory. Peele has affirmed that Brodsky is Peele's trial witness that will purported testify on Peele's behalf regarding at least six (6) different disputed issues.[8] Denying St. Gregory access to those highly-relevant Materials, which are possessed by a trial witness who will testify at trial to such Materials, is highly prejudicial and patently unfair. These actions prejudice St. Gregory in other ways, including, but not limited to: (1) denying the opportunity to refresh Brodsky's memory from prior correspondence and related Materials if Brodsky is unable to recall certain facts; (2) denying the opportunity to impeach

---

[7] In *United States v. Nobles*, the Supreme Court held that the work product privilege was waived when its holder made "testimonial use" of privileged material by adducing testimony as to some of the contents of a privileged document. *Nobles*, 422 U.S. at 239 & n. 14, 95 S. Ct. at 2170, 45 L. Ed. 2d 141 (1975). Here, Peele has disclosed at least six (6) different areas of testimony that Brodsky will offer at trial. Peele's decision to communicate with Brodsky regarding certain issues and then have Brodsky testify on his behalf regarding those same issues constitutes another waiver of any purported privilege or protection.

[8] While Peele has disclosed these "areas of testimony," Peele has failed to explain, as requested in St. Gregory's Interrogatories, what he anticipates Mr. Brodsky's testimony will be.

Brodsky if his statements at trial are inconsistent with the hidden and undisclosed Materials currently being withheld; (3) denying the opportunity to identify the basis for Brodsky and/or Peele's knowledge on matters at issue; (4) denying the opportunity to explore the important relationship between Peele and Brodsky (a trial witness) as well as any biases, prejudices, and other related issues relating to their credibility; and (5) denying the opportunity to check / verify the truthfulness of Brodsky and/or Peele's oral statements at trial or during a deposition.  Finally, withholding such Materials will likely hide the discovery of other potential facts and sources of information that may be relevant to the litigation, and without access to those Materials, St. Gregory may never discover those hidden facts or sources.  The prejudice to St. Gregory is great.

Conversely, while the prejudice to St. Gregory is great, the prejudice to Peele is *de minimus*, if non-existent, as Peele has known from the outset that communications with Brodsky are not protected.  If St. Gregory were to somehow share its privileged and/or work-product protected communications with Brodsky, Peele would undoubtedly seek those communications, and he would be entitled to them because any protection would be waived by providing them to a third-party witness, like Brodsky.

Under the Rules, there is no reason to withhold any of the requested documents from production.  It is believed that Peele is not producing these documents because Peele feels the contents of those documents are harmful to his case.  The standard for production of documents is whether they are discoverable, not whether they help or harm your case.  As an experienced trial attorney, Peele knows the consequences of producing documents to third-party witnesses in that those disclosures are discoverable by other parties.  The Court should grant this Motion and order Peele to produce the Materials requested within Request No. 10.

**C.    THE COURT SHOULD AWARD ST. GREGORY THE EXPENSES INCURRED, INCLUDING ATTORNEYS FEES, IN MAKING AND BRINGING THIS MOTION.**

For the reasons discussed above, St. Gregory's Motion to Compel Discovery Responses must be granted by the Court.  Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A):

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).   In accordance with Federal Rule of Civil Procedure 37(a)(5)(A), St. Gregory respectfully requests the Court award of fees and costs. Upon the Court granting this Motion, St. Gregory will submit a bill of costs and fee affidavit.

**III.    <u>CONCLUSION</u>**

St. Gregory's Motion must be granted and Peele should be ordered to comply with his obligations under the Federal Rule of Civil Procedure by providing full and complete answers and responses as outlined above.  Further, Peele should be ordered to reimburse St. Gregory for all of its fees and costs in having to file this Motion.

Dated this 6th day of April, 2012.

Respectfully submitted,

*/s/ Matthew H. McKinney*
Brian P. Rickert, AT0006633
Matthew H. McKinney, AT0009345
Kelly D. Hamborg, AT0003133
BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone:  515/242-2400
Facsimile:   515/283-0231
Email: Rickert@brownwinick.com
          Hamborg@brownwinick.com
          Mckinney@brownwinick.com

ATTORNEYS FOR PLAINTIFF AND
COUNTERDEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of April, 2011, I electronically filed
the foregoing with the Clerk of Court by using the CM/ECF system which, pursuant to
Local Rule 5.3(k)(1), will send a notice of electronic filing to the following:

Stanton Peele, Esq.
259A 8th St.
Brooklyn, NY 11215
Telephone: 973-507-4097
E-mail:  Stanton@peele.net

PRO SE DEFENDANT AND
COUNTERCLAIMANT                    */s/Kandi Petersen* [9]
276419.DOC

---

[9] This document has been signed, filed and served electronically.